## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

|  |  |
|---|---|
| SEE, INC., *et al.*, | |
| *Plaintiffs*, | |
| v. | Civil Action No. 20-2984 (RDM) |
| MARTY WALSH, *et al.*, | |
| *Defendants.* | |

## <u>MEMORANDUM OPINION</u>

This case poses the question whether it is enough to be right on the merits of an administrative action, even if wrong on the process. Plaintiffs See, Inc. ("See") and Nimitt Nishith Bhatt bring this action under the Administrative Procedure Act ("APA"), 5 U.S.C. § 701 *et seq.*, seeking to set aside the Department of Labor's denial of See's application for a "permanent employment certification" on Bhatt's behalf. A Certifying Officer denied See's application on the ground that Bhatt's skills described in the employment experience portion of the application did not match the skills listed in the minimum job requirements portion of the application. See requested reconsideration of the Certifying Officer's decision and, in support of that request, submitted two letters from Bhatt's former employers, which represented that Bhatt did, in fact, possess the skills that the Certifying Officer identified as missing from the description of Bhatt's employment experience contained in the application. The Certifying Officer denied See's request for reconsideration, explaining that, although the letters showed that Bhatt possessed the required skills, Department of Labor regulations "allow labor certification to be granted solely on the basis of the information" contained in the application. Dkt. 18 at 27; *see*

*also* 20 C.F.R. §§ 656.11(b) & 656.24(g)(2).  The Board of Alien Labor Certification Appeals ("Board") affirmed.

Plaintiffs ask this Court to set aside the Board's decision pursuant to the APA.  Plaintiffs allege that because the Certifying Officer acknowledged that the letters showed that Bhatt had the requisite experience and because the Board accepted that premise, the Board's decision was arbitrary and capricious and unsupported by substantial evidence.  Dkt. 6 (Am. Compl. ¶¶ 36–41).  In other words, Plaintiffs contend that because Bhatt's qualifications are, in essence, uncontested, the Certifying Officer and the Board had only one choice; they were required to grant the application.  Defendants disagree, arguing that See failed to comply with the regulatory requirements for completing the application, and thus the Board properly upheld the Certifying Officer's rejection of See's request for reconsideration.

The parties' cross-motions for summary judgment are now pending before the Court.  For the following reasons, the Court concludes that the Board lawfully determined that See's process failure required rejection of its application, even if, as a matter of substance, See was able to show on reconsideration that Bhatt had the necessary qualification.  The Court, accordingly, will **GRANT** the Defendants' motion, Dkt. 13, and will **DENY** Plaintiffs' motion, Dkt. 12.

## I.  BACKGROUND

### A.    Statutory and Regulatory Background

Pursuant to the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1101 *et seq.*, a U.S. employer seeking permanently to employ a noncitizen may apply for an employment-based immigration visa on the noncitizen's behalf.  For certain categories of employment-based immigrants, including the category of "skilled workers" at issue in this case, *see* 8 U.S.C. § 1153(b)(3), the first step in the visa application process is to obtain a "permanent labor

certification" from the Department of Labor by filing a "completed Department of Labor Application for Permanent Employment Certification form" or "ETA Form 9089."  20 C.F.R. § 656.17(a)(1).  Applications are "screened" by a Department of Labor Certifying Officer and are "certified," "denied," or "selected for audit."  *Id.* § 656.17(b)(1).  A Certifying Officer will certify an application if she determines, based on the information contained in the Form 9089, that (1) "there are not sufficient [U.S.] workers who are able, willing, qualified[,] . . . and available" to perform the job, and (2) employing the noncitizen "will not adversely affect the wages and working conditions of workers in the United States similarly employed."  8 U.S.C. § 1182(a)(5)(A)(i); *see also* 20 C.F.R. § 656.2(c).

The Department of Labor has promulgated regulations implementing the labor certification process.  *See* 20 C.F.R. §§ 656.1–41.  Under those regulations, prior to filing an ETA Form 9089, an employer must attempt to recruit U.S. workers for the job opportunity for which certification is sought, and the employer must report the results of its recruitment efforts to the agency.  *Id.* § 656.17(e)–(g).  As part of the recruitment process, the employer must place a "job order" with the relevant state workforce agency and must place at least two "print advertisements" in newspapers or professional journals.  *Id.* § 656.17(e)(1)(i), (2).  The job requirements and duties listed in those recruitment materials may not "exceed" those listed on the ETA Form 9089.  *Id.* § 656.17(f)(6).  Similarly, the ETA Form 9089's description of the job requirements and duties "must represent the employer's actual minimum requirements for the job."  *Id.* § 656.17(i)(1).  If the noncitizen "already is employed by the employer" at the time of filing the ETA Form 9089, the Certifying Officer will "review the training and experience possessed by the alien at the time of hiring by the employer" when considering "whether the job requirements represent the employer's actual minimums."  *Id.* § 656.17(i)(3).  The purpose of

3

these regulations is to prevent "the situation of an employer requiring more stringent qualifications of a U.S. worker than it requires of the alien; the employer is not allowed to treat the alien more favorably than it would a U.S. worker." *Tri-Town Family Dental, LLC*, 2016-PER-00231, 2019 WL 3453199, at *2 (Bd. Alien Lab. Cert. App. July 19, 2019) (quotation marks omitted).

The labor certification regulations also include strict requirements for completing and filing the Form 9089.  Employers "should not" submit "[d]ocumentation supporting the application for labor certification" with the form, but if a Certifying Officer "notifies the employer that its application is to be audited, the employer must furnish required supporting documentation prior to a final determination."  20 C.F.R. § 656.17(a)(3); *see also id.* § 656.10(f) ("Copies of applications for permanent employment certification filed with the Department of Labor and all supporting documentation must be retained by the employer for 5 years from the date of filing the [Form 9089].").  Significantly, "[i]ncomplete applications will be denied," *id.* § 656.17(a)(1), and, once an application is filed, "[r]equests for modifications to [the] application will not be accepted," *id.* § 656.11(b).

If a Certifying Officer denies an employer's application, the employer may "request reconsideration within 30 days from the date of issuance of the denial."  *Id.* § 656.24(g)(1).  A request for reconsideration may not include any supporting documentation except the following:

> (i)    Documentation that the Department actually received from the employer in response to a request from the Certifying Officer to the employer; or

> (ii)   Documentation that the employer did not have an opportunity to present previously to the Certifying Officer, but that existed at the time the Application for Permanent Labor Certification was filed, and was maintained by the employer to support the application for permanent labor certification in compliance with the requirements of § 656.10(f).

*Id.* § 656.24(g)(2)(i)–(ii).  Even if an employer submits documentation with its request for

reconsideration that fits within one of the two exceptions provided in Section 656.24(g)(2), "the

Certifying Officer will not grant any request for reconsideration where the deficiency that caused

denial resulted from the applicant's disregard of a system prompt [when filling out the Form

9089] or other direct instruction."  *Id.* § 656.24(g)(3).

If an application is denied or if the Certifying Officer denies a request for

reconsideration, an employer may request review by the Board.  *Id.* § 656.26(a).  Alternatively,

the employer may simply restart the certification process by filing "a new application . . . at any

time."  *Id.* § 656.24(e)(5).

**B.      Factual Background**

On November 21, 2014, See filed an ETA Form 9089 on behalf of its employee, Nishith

Bhatt, for the position of "IT Systems Coordinator."  Dkt. 18 at 39.  Section H of the standard

Form 9089 requires U.S. employers to describe, among other things, the "duties" and "specific

skills or other requirements" of the job for which the employer seeks to permanently employ a

noncitizen.  *Id.* at 40.  See stated in Section H that the IT Systems Coordinator position required

the following skills:

> [A]t least three years of experience within Optical Industry in the position
> offered, utilizing/managing AcuityLogic applications and databases, Telerik
> controls, nHibernate (ORM tool), Visual Studio 2008 or later, .net framework
> 3.5 or later, ASP.Net, C#, Ado.Net, Visual Basic, Classic ASP, XML, Crystal
> Reports and SQL Server 2008 or later, and design and development of web-
> based applications using Visual Studio, HTML Script, JavaScript, CSS,
> XML/XSLT.

*Id.*

Section K of the ETA Form 9089 requires the employer to list "all jobs the alien has held

during the past 3 years."  *Id.* at 43.  For each job, the form requires the U.S. employer to describe

the "[j]ob details," meaning the "duties performed, use of tools, machines, equipment, *skills*,

qualifications, certifications, licenses, etc." *Id.* at 44 (emphasis added).  In addition, Section K

directs the U.S. employer to describe "any other experience that qualifies the alien for the job

opportunity for which the employer is seeking certification." *Id.* at 43.  In Section K of See's

ETA Form 9089, the company listed eight of Bhatt's previous jobs dating back to 2000.  *Id.* at

48–59.  In an addendum, See described each of Bhatt's eight past positions in detail, explaining

his role and, where relevant, the "skills" that he developed in each job.  *Id.*

On July 31, 2015, the Certifying Officer denied certification pursuant to 20 C.F.R.

§ 656.17(i)(1).  *Id.* at 30–32.  That provision requires that "[t]he job requirements, as described

[in the Form 9089], must represent the employer's actual minimum requirements for the job

opportunity."  20 C.F.R. § 656.17(i)(1).  The Certifying Officer reasoned that Bhatt's

"qualifications[,] as listed [i]n [section K of the ETA Form 9089,] demonstrate [that Bhatt] does

not meet the requirements as described in section H of the application."  Dkt. 18 at 32.

Specifically, See's description of Bhatt's work experience in Section K did not "specify that

[Bhatt] has acquired skill in Visual Studio, Ado.net, XML, HTML, CSS or XML/XSLT," despite

the fact that See listed those skills among the minimum requirements for the position under

Section H of the Form 9089.  *Id.*  "Because the employer is willing to hire an employee who did

not meet the job requirements in Section H on [the] Form 9089," the Certifying Officer

explained, "those requirements cannot represent the employer's actual minimum requirements

for the job opportunity."  *Id.*  The Certifying Officer, accordingly, concluded that See had not

complied with 20 C.F.R. § 656.17(i)(1), and thus denied certification.  *Id.*

On August 28, 2015, See requested reconsideration of the Certifying Officer's decision.

*Id.* at 33.  In support, the company submitted letters from two of the Bhatt's former employers—

each signed and dated before the filing date on the Form 9089—which, according to See, "establish that [Bhatt] had the qualifications required for the position at the time of filing." *Id.* In one of the letters, for example, Bhatt's former supervisor stated that Bhatt "demonstrated in-depth knowledge and experience in design and development of web applications using Java, JSP, Struts, Visual Studio, HTML Script and SML/XSLT; Ado.net, ASP.NET and Visual Basic." *Id.* at 36.  See's request for reconsideration also stated that See "did not have an opportunity to present [the letters] previously to the Certifying Officer" because "no audit was issued, and no documentation can be filed with the form ETA 9089." *Id.* at 33; *see also* 20 C.F.R. § 656.17(a)(3).  Finally, See noted that, "[a]s can be seen from their date, [the letters] existed at the time the Application for Permanent Employment Certification was filed," and the letters were "maintained by the employer to support the application" in compliance with the regulations that require employers to retain supporting documentation for five years.  Dkt. 18 at 33; *see also* 20 C.F.R. § 656.10(f).

On January 8, 2016, the Certifying Officer denied See's request for reconsideration. Acknowledging that Bhatt's "experience letters clarify that [Bhatt] actually met the special skills requirements listed in . . . the ETA Form 9089[] prior to hire by the sponsoring employer," the Certifying Officer nevertheless denied reconsideration because "the [application] process . . . is structured to allow labor certification to be granted solely on the basis of the information contained in the . . . Form 9089."  Dkt. 18 at 29.  As the Certifying Officer further explained, because See did not indicate in Section K of the ETA Form 9089 that Bhatt had each of the minimum skills listed in Section H of the Form, it failed to carry its burden, and that omission could not be corrected through the reconsideration process.  *Id.*  The Certifying Officer further explained that "[o]n July 28, 2014, the Department updated its FAQs to advise users of the

[application] program that an employer must now demonstrate [that] the foreign worker . . . meets all . . . requirements listed on the ETA Form 9089[] at the time the application is submitted for processing." *Id*. "Therefore," the Certifying Officer continued, "any application filed after July 28, 2014, must demonstrate, at the time of filing, that the foreign worker meets each and every requirement listed on the ETA Form 9089." *Id.* See failed that test.

On February 5, 2016, See requested review by the Board. The company argued that the Certifying Officer should have considered Bhatt's employment letters pursuant to the Department's regulations governing reconsideration, 20 C.F.R. § 656.24(g)(2)(ii), which permit requests for reconsideration to include "[d]ocumentation that the employer did not have an opportunity to present previously to the Certifying Officer, but that existed at the time the [ETA Form 9089] was filed, and was maintained by the employer to support the application . . . in compliance with" the regulations governing document retention. *Id.*; Dkt. 18 at 22–25. Ignoring the Certifying Officer's reference to the governing regulations, See further argued that the "sole authority" relied upon by the Certifying Officer in denying its application—the Department of Labor online FAQ—was "invalid" because (1) it was a "substantive rule" that had not undergone notice-and-comment or been published in the Federal Register, as required by the Administrative Procedure Act; (2) it conflicted with "the employer's right to submit evidence with a motion to reconsider[,] as expressly permitted" by the regulations governing reconsideration; and (3) in light of this conflict, "priority must go to the regulation." Dkt. 18 at 23–24. See's request was forwarded to the Board for review on February 10, 2016, *id.* at 27, and an appeal was docketed on April 22, 2016, *id.* at 19.

See's appeal then took a wrong turn, which delayed the proceeding for four years. On August 31, 2016, an attorney with no connection to this matter wrote a letter to the Board stating

that her firm was "counsel to the Petitioner and Beneficiary in connection with" the case number assigned to See's appeal and that her clients "wish[ed] to withdraw the appeal." *Id.* at 15.  The letter was short and contained only two paragraphs describing the reasons for withdrawing the appeal, neither of which reflected the arguments raised by See in the certification process up to that point. *Id.* at 15–16.  On October 7, 2016, in response to the withdrawal letter, the Board dismissed See's appeal. *Id.* at 17.  See and its counsel were surprised to learn that their appeal had been dismissed because, as the Board recognized only years later, the withdrawal letter was mistakenly submitted in the wrong proceeding.  On October 25, 2016, See wrote a letter to the Board explaining that See had never asked to withdraw its appeal; that See's attorney of record had not received a copy of the Board's Order of Dismissal; and that the attorney who filed the letter confirmed to See's counsel that she represented a different entity that had recently withdrawn an appeal. *Id.* at 12.

Unfortunately, the Board took no action in response to See's letter.  On October 16, 2020, See filed this lawsuit, seeking to "compel agency action unlawfully withheld or unreasonably delayed" pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(1).  Dkt. 1 at 5 (Compl. ¶ 17).  Less than two months later, the Board issued an order vacating dismissal of See's appeal and reinstating it "on the ground that neither [counsel] nor the Employer withdrew the appeal in that matter."  Dkt. 18 at 10.  According to the Board's decision, the record "indicate[d] that the September 6, 2016 motion to withdraw was intended to have been for [Board] Case No. 2016-PER-00292, and not [Board] Case No. 2016-PER-00282." *Id.*  "Thus, the dismissal of [See's] appeal was based on a mistake." *Id.*

On January 28, 2021, the Board issued a per curiam decision and order affirming the Certifying Officer's denial of See's application.  First, in a footnote, the Board explained that in

the time since the Certifying Officer denied See's application, Board "panels have held the July 28, 2014 [online] FAQ invalid" because it was not "properly promulgated as either an Instruction pertaining to the Form 9089 or as a legislative rule, which would be necessary if it were to have the force and effect of law." *Id.* at 5 n.3 (quotation marks omitted). The Board went on to explain, however, that the Certifying Officer correctly denied See's request for reconsideration. Citing two Board decisions that "provide some guidance," the Board explained that, although the regulations generally "require letter-perfect applications, 'Board panels have ruled that applications cannot be denied solely based on an employer's failure to include information on the Form 9089 where it is not apparent how the information could be included on the Form.'" *Id.* at 7 (quoting *Guess?, Inc.*, 2015-PER-00504, 2017 WL 2840993, at *6 (Bd. Alien Lab. Cert. App. June 28, 2017)); *see also Solar Turbines*, *Inc.*, 2016-PER-00025, 2017 WL 2490719, at *2–3, (Bd. Alien Lab. Cert. App. June 2, 2017). The "controlling question" in the appeal was thus whether "the skills and experience missing from Section K could have been included there or whether they were secured by [Bhatt] in a manner unrelated to prior employment, which would necessitate an opportunity for [See] to supplement the record to provide that missing information." *Id.* at 8. Because the record indicated that Bhatt "gained experience with Visual Studio, Ado.net, XML, HTML, CSS, and XML/XSLT while [he] was employed" and because "[See's] section K work experience attestations for [the relevant] employers listed no experience with these technologies," the Board concluded that See's application was facially deficient. *Id.* Nor could See cure that deficiency through a request for reconsideration. As the Board explained, although "20 C.F.R. § 656.24(g)(2)(ii) allows [employers] to submit . . . experience letters on reconsideration, 20 C.F.R. § 656.11(b) prevents [employers] from using those letters to functionally modify the Form 9089." *Id.*

On March 21, 2021, Plaintiffs filed an amended complaint in this action, which added Bhatt as a plaintiff and which alleged that the Board's decision should be set aside as "arbitrary and capricious" pursuant to the Administrative Procedure Act, 5 U.S.C. § 706(2).  Dkt. 6 at 16–18 (Am. Compl. ¶¶ 37–41).  The parties' cross-motions for summary judgment are now before the Court.  Dkt. 12; Dkt. 13.

## II.  LEGAL STANDARD

The APA directs courts to "hold unlawful and set aside agency action" that is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law."  5 U.S.C. § 706(2).  Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, [or] offered an explanation for its decision that runs counter to the evidence before the agency." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983).  The Court must ensure that "the process by which [the agency] reache[d] [its] result [was] logical and rational."  *Michigan v. EPA*, 576 U.S. 743, 750 (2015) (quoting *Allentown Mack Sales & Serv., Inc. v. NLRB*, 522 U.S. 359, 374 (1998)).  In doing so, however, the Court must "not . . . substitute its [own] judgment for that of the agency."  *State Farm*, 463 U.S. at 43.  "The [C]ourt will ordinarily uphold an agency's decision so long as the agency 'examined the relevant data and articulated a satisfactory explanation for its action, including a rational connection between the facts found and the choice made.'"  *Animal Legal Def. Fund v. Perdue*, 872 F.3d 602, 611 (D.C. Cir. 2017) (alterations omitted) (quoting *State Farm*, 463 U.S. at 43).

In an APA case, summary judgment "serves as a 'mechanism for deciding, as a matter of law, whether the agency action is . . . consistent with the APA standard of review.'"  *Fisher v. Pension Benefit Guar. Corp.*, 468 F. Supp. 3d 7, 18 (D.D.C. 2020) (quoting *Cayuga Nation v.*

*Bernhardt*, 374 F. Supp. 3d 1, 9 (D.D.C. 2019)).  In essence, "the district judge sits as an
appellate tribunal," and "the entire case on review is a question of law."  *Am. Bioscience, Inc. v.
Thompson*, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (quotation marks omitted).

### III.  ANALYSIS

In Plaintiffs' view, this is very simple case; indeed, the argument section of their brief in
support of summary judgment spans fewer than two pages.  In that brief, as in their amended
complaint, Plaintiffs press only one argument—that "[n]either the Certifying Officer nor [the
Board] disputed that See met all the requirements for labor certification" under 8 U.S.C.
§ 1182(a)(5)(A), and thus "the Secretary of Labor's failure to" grant the requested certification
was necessarily "unsupported by substantial evidence and therefore arbitrary and capricious."
Dkt. 12-1 at 14–15; *see also* Dkt. 6 at 16–18.  Put differently, under Plaintiffs' theory of the case,
(1) the Certifying Officer initially denied the application because the list of skills that Bhatt
obtained through prior employment did not include several of the minimum skills identified in
Section H of the ETA Form 9089; (2) See addressed that deficiency by submitting letters from
Bhatt's prior employers indicating that he possessed the necessary skills; (3) those letters were
written before See submitted the application, but were not submitted because an applicant is
allowed to submit evidence only in response to an audit request; and, accordingly, (4) the
Certifying Officer should have considered the letters on reconsideration and should have, on the
basis of those letters, granted the application.  Dkt. 12-1 at 14–15.  Any conclusion to the
contrary, Plaintiffs maintain, ignores the undisputed evidentiary record and the plain terms of 8
U.S.C. § 1182, which requires the Secretary of Labor to grant a certification when, as here, the
employer has shown that "there are not sufficient workers who are able, willing, qualified[,] . . .
and available" and that "the employment of [the] alien will not adversely affect wages and

working conditions of workers in the United States similarly employed," 8 U.S.C.

§ 1182(a)(5)(A)(i).

The Department of Labor's response, although more expansive, is equally straightforward.  In the Department's view, Plaintiffs ignore two simple facts: first, See's initial application was deficient on its face.  It represented that the minimum job requirements included a list of "[s]pecific skills," *see* Dkt. 18 at 40, and that list included several skills that, according to the descriptions contained in the application, were not among those that Bhatt had acquired from his prior employment, Dkt. 13-1 at 18–19.  From this inconsistency, the Certifying Officer reasonably concluded that "See was willing to hire Bhatt even though he lacked the required skills listed" in the application, and thus "those required skills were not, in fact, the 'actual minimum requirements for the job opportunity.'"  *Id.* at 10 (quoting 20 C.F.R. § 656.17(i)(1)). Second, the government regulations do not permit an applicant to modify the application after it is submitted, 20 C.F.R. § 656.11(b), and a request for reconsideration "may not be used to effectuate [a] modification," Dkt. 13-1 at 7 (citing 20 C.F.R. § 656.24(g)(2)).

For the following reasons, the Court agrees with the Department that the Board's decision was not arbitrary or capricious and that it was supported by substantial evidence.

## A.

The thrust of Plaintiffs' argument is that the Board ignored the undisputed evidence that Bhatt possessed all of the required skills identified in Section H of the ETA Form 9089 and, thus, its decision cannot withstand APA scrutiny.  But, in making that argument, Plaintiffs ignore the governing regulations, which provide the basis for the Board's decision.  The INA itself says nothing abut how the Department should process certification applications, "leav[ing] to the Department a broad area for the exercise of its discretion in issuing labor certifications."  *Indus.*

*Holographics, Inc. v. Donovan*, 722 F.2d 1362, 1366 (7th Cir. 1983). "Where the agency must make a large number of individual discretionary decisions, it is entirely appropriate for it to issue regulations . . . [that] simplify the administrative task and help guard against arbitrary agency action." *Id.*; *cf. Glaser v. FCC*, 20 F.3d 1184, 1186 (D.C. Cir. 1994) (noting that "[t]here can be no doubt of the FCC's authority to impose strict procedural rules in order to cope with the flood of applications it receives or expects to receive"). By promulgating regulations governing permanent labor certifications, the Department has taken steps to manage the certification process efficiently.

The Department's labor certification regulations provide clear notice of the application requirements. They require, for example, that the "job requirements, as described [in the ETA Form 9089], must represent the employer's actual minimum requirements," 20 C.F.R. § 656.17(i)(1), and that the Department "will review the training and experience possessed by the alien beneficiary at the time of hiring by the employer" when considering "whether the job requirements represent the employer's actual minimums." 20 C.F.R. § 656.17(i)(1), (3). The regulations also specify in unambiguous terms that "[r]equests for modifications to an application will not be accepted." *Id.* § 656.11(b). The rules relating to reconsideration are equally constrained. To be sure, they permit an applicant to submit additional documentation at the reconsideration stage, but only if (1) "the employer did not [previously] have an opportunity to present" the documentation to the Certifying Officer; and (2) the documentation "existed at the time the [a]pplication . . . was filed[] and was maintained by the employer to support the application." *Id.* § 656.24(g)(2)(ii). The reconsideration rule is emphatic, however, that it does not permit the Certifying Officer to grant relief "where the deficiency that caused [the original]

denial resulted from the applicant's disregard of a system prompt *or other direct instruction*."
*Id.*  § 656.24(g)(3) (emphasis added).

In rejecting See's appeal, the Board relied on these rules.[1]  As the Board explained, the rules contemplate two different types of cases.  When an employer fails to include information that it "could have [] included" in its initial submission, it is precluded from subsequently submitting the missing information, including—as in this case—evidence of "skills and experience missing from Section K."  Dkt. 18 at 8.  In contrast, when an employer fails to list a foreign worker's special skills on the ETA Form 9089 because "there was no logical place to list those skills," the Board has permitted the employer to "submit[] documentation" of those skills "with its request for reconsideration."  *Id.* at 7.  The Board has held, for example, that a Certifying Officer was required to consider evidence that a noncitizen had gained qualifying skills through "coursework" and "a Master's [Degree] project," because "the limitations of the Form 9089 and the properly promulgated instructions for the form"—which only provide space for describing *employment* experience—"effectively prevented the presentation of the documentary evidence concerning the Alien's specific qualifications to the [Certifying Officer]." *Solar Turbines*, *Inc.*, 2017 WL 2490719, at *2–3.  But, consistent with the text of the regulations, that exception does not extend to cases, like this one, where "[t]he record does not otherwise

---

[1] As Plaintiffs note, the Board was limited to the grounds relied upon by the Certifying Officer. *See Loews Anatole Hotel*, 1989-INA-230, 1991 WL 120176, at *2 (Bd. Alien Lab. Cert App. Apr. 26, 1991).  To the extent Plaintiffs suggest that the Certifying Officer relied on the FAQ alone (or even principally), *see* Dkt. 12-1 at 7, however, they are incorrect.  The Certifying Officer's decision was based on the "structure[]" of the "Department's regulations at 20 [C.F.R.] § 656" and See's failure to submit documents "in accordance with the Department's regulations at 20 [C.F.R.] [§] 656.17(i)(1)."  Dkt. 18 at 29.  The Certifying Officer referenced the FAQ merely to highlight the Department's "effort[s] to advise the general public" of the regulatory requirements.  *Id.*

indicate that the [a]lien gained experience with these technologies outside of the employment context." Dkt. 18 at 8.

To start, the Board's understanding that the regulations do not permit an applicant to cure deficiencies in an application after it is submitted is correct.[2]  Section 656.11(b) provides that "[r]equests for modifications to an application will not be accepted for applications submitted after July 16, 2007."  20 C.F.R. § 656.11(b).  Although the rule does not define the term "modification," as a matter of common usage, it means "[a] change," "alteration," or "amendment."  *Modification*, Black's Law Dictionary (11th ed. 2019) ("A change to something; an alteration or amendment.").  If the Form 9089 provides a space for listing a foreign worker's skills, but the employer neglects to describe the relevant skills when completing the form, then the employer may not cure that deficiency by submitting "evidence" of those skills.  If, on the other hand, "it is not apparent how the information could [have been] included on the Form [9089]" in the first place, *Guess?, Inc.*, 2017 WL 2840993, at *6, then the employer does not request a *modification* to the application when it submits additional information—rather, the employer seeks an opportunity to submit relevant information for the first time.

Reasonably construed, Section 656.24(g) is consistent with this understanding.  As noted, Section 656.24(g) permits employers to include with a request for reconsideration "[d]ocumentation that the employer did not have an opportunity to present previously to the Certifying Officer, but that existed at the time the [Form 9089] was filed[] and was maintained by the employer to support the application."  20 C.F.R. § 656.24(g)(2)(ii).  But Section 656.24(g)

_____

[2] The Court need not consider whether the Board's reading of the governing regulations is entitled to deference, *see Kisor v. Wilkie*, 139 S. Ct. 2400, 2408 (2019), because it is clearly correct—and, in any event, Plaintiffs do not challenge the Board's reading of the regulations.

does not stop there; it further provides that "the Certifying Officer will *not* grant any request for reconsideration where the deficiency that caused denial resulted from the application's disregard of a system prompt or other direct instruction." *Id.* § 656.24(g)(3) (emphasis added). And, here, the relevant instructions appear on the face of ETA Form 9089. The Form instructs the employer, for example, to "[l]ist all jobs the alien has held during the past 3 years," along with "any other experience that qualifies the alien for the job opportunity for which the employer is seeking certification," Dkt. 18 at 43; and to describe, for each job listed, the "[j]ob details (duties performed, use of tools, machines, equipment, *skills*, qualifications, certifications, licenses, etc.)," *id.* at 49 (emphasis added). Nor can Plaintiffs reasonably maintain that See did not understand these instructions; the company attached an eight-page addendum to its application describing the job duties and the skills that Bhatt acquired at See and at each of his prior jobs. *See id.* at 52–59. See's omission of certain skills from those lists may have been a mistake, but that mistake was neither the product of incomplete or misleading instructions nor the lack of opportunity.

The Board's understanding of the governing regulations is also consistent with the relevant regulatory history. *See* Labor Certification for the Permanent Employment of Aliens in the United States, 72 Fed. Reg. 27,904 (May 17, 2007) ("Final Rule"). In 2007, the Department adopted the current rule "prohibiting modifications to permanent labor certification applications once such applications are filed with the Department." *Id.* at 27,907. As the Department explained, the clarification addressed the "critical need to discontinue what has historically been continual, unduly time-consuming communication between ETA Certifying Officers and employers or their representatives." *Id.* at 27,917. In the Department's view, "[p]rohibiting the modification of applications [would] allow the Department to process employer applications

more quickly and [would] support greater uniformity and consistency in their adjudication." *Id.*
at 27,916.  A disappointed applicant, moreover, would be able to refile "immediately if it does
not seek reconsideration or appeal." *Id.*

In adopting the Final Rule, moreover, the Department criticized a then-recent en banc
decision of the Board, which had taken a more forgiving approach to mistakes in ETA Form
9089 applications.  *Id.*  In *HealthAmerica*, the Board vacated a denial of certification because the
Certifying Officer declined to consider evidence submitted with an employer's request for
reconsideration, which demonstrated that the employer had mistakenly provided an incorrect
date in its Form 9089 application.  *See HealthAmerica*, 2006-PER-00001, 2006 WL 5040202, at
*10 (Bd. Alien Lab. Cert. App. July 18, 2006) (en banc).  In vacating the Certifying Officer's
decision, the Board asserted that the regulations governing certification did not require that
applications be "letter-perfect." *Id.* at *10–11.  But in the Final Rule, the Department disagreed,
explaining that "[t]o the extent the [Board] favored allowing the employer in *HealthAmerica* to
present evidence that effectively changed the response to a question on the application, the
[Board]'s approach is inconsistent with the Department's objective and the [Notice of Proposed
Rulemaking] proposal that applications cannot be changed or modified after submission."  72
Fed. Reg. at 27,916.  Simply put, the Final Rule makes clear that the Department did not intend
to permit employers to correct their Form 9089—even in minor ways—after submission.

Finally, the Board's interpretation of the governing regulations in this case is consistent
with its decisions in similar cases.  Although the Court is not bound by those panel decisions,
consistency among agency decisions can be a factor in determining whether to set aside agency
action as arbitrary and capricious.  *See Hall v. McLaughlin*, 864 F.2d 868, 872 (D.C. Cir. 1989)
("Reasoned decisionmaking requires treating like cases alike; an agency may not casually ignore

its own past decisions."). The Board has consistently affirmed denials of requests for reconsideration when the reason for the denial was that the employer omitted skills from the foreign worker's employment history in Section K of the Form 9089, even when the employer has submitted evidence that would cure the deficiency, if considered. As the Board explained in a 2018 per curiam decision, "the general thread that weaves its way through our Section H.14/Section K decisions is whether information left out of Section K was the type of information that should have been included, or whether there was not a logical place for the information on the form." *Carlson Wagonlit Travel*, 2016-PER-00314, 2018 WL 4111075, at *3 (Bd. Alien Lab. Cert. App. Aug. 23, 2018). If the omitted information should have been included in the form, "later attempts to include the information generally constitute a prohibited amendment to the application." *Id.*; *see also, e.g*, *Verian Techs. LLC*, 2015-PER-00297, 2018 WL 889759 (Bd. Alien Lab. Cert. App. Feb. 7, 2018); *Viteos Fund Servs.*, 2012-PER-02887, 2017 WL 953412 (Bd. Alien Lab. Cert. App. Mar. 3, 2017). But if the form had no logical place for the information, "we have allowed supplementation of the record, for instance, on reconsideration, because the Employer could not have been expected to include information that was not clearly requested or required by the Form." *Carlson Wagonlit Travel*, 2018 WL 4111075, at *3; *see also*, *e.g.*, *Smartzip Analytics*, 2016-PER-00695, 2016 WL 6680517 (Bd. Alien Lab. Cert. App. Nov. 9, 2016); *Apple Inc.*, 2011-PER-01669, 2015 WL 309427 (Bd. Alien Lab. Cert. App. Jan. 20, 2015).

For all of these reasons, the Court is persuaded that the Board correctly construed the governing regulations to preclude an applicant from effectively modifying—or correcting—a deficient ETA Form 9089 through the reconsideration process. Rather, once an application is submitted, the applicant may not modify the application. Instead, if a deficiency in the

application is identified, the applicant should file a new ETA Form 9098, which it is free to do at any time.  That rule is both rational and promotes a legitimate regulatory interest.  To permit an employer to cure a deficiency in an application by submitting evidence along with a request for reconsideration would undermine the scheme that the Department adopted in the name of efficiency.  Precluded from modifying deficient applications, employers would simply wait for denial and then submit evidence in support of a request for reconsideration that, in effect, would indirectly cure a deficiency that the applicant is not permitted to cure directly.  Such a reading of the statute and regulations is not supported by the text or common sense.

**B.**

For similar reasons, the Court is unpersuaded that the Board's application of this settled rule to See's administrative appeal was arbitrary or capricious.  Notably, there is no reason why See "could not have been expected" to include Bhatt's skills in Visual Studio, Ado.net, XML, HTML, CSS or XML/XSLT on its Form 9089, *Carlson Wagonlit Travel*, 2018 WL 4111075, at *3, and Plaintiffs make no effort to identify any such obstacle.  To the contrary, in completing the ETA Form 9089, See provided detailed descriptions of Bhatt's work experience and the skills he gained in his previous jobs, including during his time at a company called Eyefinity.  *See* Dkt. 18 at 53.  Bhatt's supervisor at Eyefinity, Sam Nasser, wrote one of the letters that See later submitted with its request for reconsideration, *see id.* at 36–37, which states that, "[d]uring his employment . . . [Bhatt] demonstrated in-depth knowledge and experience in design and development of web applications using Java, JSP, Struts, Visual Studio, HTML Script and SML/XSLT; Ado.net, ASP.NET and Visual Basic; [and] SaaS model."  *Id.* at 37.  Plaintiffs never explain why See could not have included this information in its description of Bhatt's work for Eyefinity in the ETA Form 9089.

20

It is equally clear that the Board's decision affirming the Certifying Officer's rejecting of See's request for reconsideration was supported by substantial evidence. The "question before the Court . . . is whether a 'reasonable mind might accept a particular evidentiary record as adequate to support [the agency's] conclusion.'" *Open Soc'y Inst. v. USCIS*, No. 19-3620, 2021 WL 4243403, at *14 (D.D.C. Sept. 17, 2021) (quoting *Dickinson v. Zurko*, 527 U.S. 150, 162 (1999)). An "agency's factual findings may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." *Dillmon v. Nat'l Transp. Safety Bd.*, 588 F.3d 1085, 1089 (D.C. Cir. 2009) (quotation marks omitted). The Court must, accordingly, uphold the Board's decision if, based on the evidence before it, "the agency could fairly and reasonably find the facts as it did." *Chritton v. Nat'l Transp. Safety Bd.*, 888 F.2d 854, 856 (D.C. Cir. 1989) (quotation marks and alterations omitted).

Not only is that standard easily satisfied here, but the Court cannot discern how the Board could have reasonably reached a different conclusion. As noted, See's description of Bhatt's work experience in Section K of the ETA Form 9089 failed to specify that Bhatt had acquired skill in "Visual Studio, Ado.net, XML, HTML, CSS or XML/XSLT," Dkt. 18 at 7, even though See listed those skills among its requirements for the position elsewhere in the form. *Id.* at 40. Thus, as initially submitted, See's ETA Form 9089 did not satisfy 20 C.F.R. § 656.17(i)(1). Notably, Plaintiffs make no argument to the contrary.

In Plaintiffs' view, however, the Board's decision is unsupported by substantial evidence because the record shows that, in fact, Bhatt possessed the required experience and skills. But that argument ignores the governing procedural rules, which precluded the Certifying Officer and the Board from considering the evidence the See proffered in support of its request for reconsideration. Once the Certifying Officer found that See's ETA Form 9089 was deficient, her

only choice was to deny the application, and See was not permitted to cure that deficiency directly by modifying its application or indirectly by submitting evidence along with its request for reconsideration.

The Court, accordingly, concludes that the Board's decision affirming the Certifying Officer's denial of reconsideration was neither arbitrary and capricious nor unsupported by substantial evidence.

## C.

Finally, Plaintiffs raise several arguments for the first time in their reply brief and brief in opposition to Defendants' cross-motion.  Specifically, Plaintiffs argue that (1) the regulation requiring that job requirements in a Form 9089 "must represent the employer's actual minimum requirements," 20 C.F.R. § 656.17(i)(1), conflicts with the INA and is thus invalid, Dkt. 15 at 3–6; (2) there is "no rule that a [Certifying Officer] is limited to considering the Form ETA 9089 in determining whether the beneficiary possessed the necessary qualifications at the time of hire," *id.* at 8; and (3) "the fact that the [employment] letters are in the Administrative Record show[s] that[,] regardless of the defendants' claims to the contrary[,] they were considered by the agency." *id.* at 10.

Each of these arguments suffers from an array of dispositive, procedural difficulties.  Three such difficulties stand out.  First, to the extent Plaintiff seeks to challenge the lawfulness of the Department's governing regulations as inconsistent with the INA, that is not the challenge that they have brought.  They do not ask the Court to invalidate the regulations, and they do not allege that the Board erred by relying on invalid regulations.  Rather, they allege that the Board's decision is "unsupported by substantial evidence[] and" is, "therefore[,] arbitrary and capricious."  Dkt. 6 at 17–18.  The Court will not consider a challenge to the Department's

regulations that appears nowhere in Plaintiffs' complaint.  Second, to the extent Plaintiffs

contend that the governing regulations do not restrict the Certifying Officer's evaluation of an

application to the information contained in the ETA Form 9089, See never raised that regulatory

argument before the Department, and "well-established doctrine of issue waiver . . . permits

courts to decline to hear arguments not raised before the agency where the party had notice of the

issue."  *CSX Transp., Inc. v. Surface Transp. Bd.*, 584 F.3d 1076, 1079 (D.C. Cir. 2009).  Third,

all three arguments were raised for the first time in Plaintiffs' reply in support of their motion for

summary judgment and opposition to Defendants' cross-motion for summary judgment.  The

Court need not consider "arguments raised for the first time in a party's reply," *Okpara v.*

*District of Columbia*, 174 F. Supp. 3d 6, 13 (D.D.C. 2016) (quotation marks omitted); *see also*

*Rollins Envt'l Servs. v. EPA*, 937 F.2d 649, 652 n.2 (D.C. Cir. 1991), and, thus, at a minimum,

Plaintiffs may not rely on these arguments in support of their affirmative motion for summary

judgment.

     But, even if Plaintiffs could overcome these procedural defects, each of their late-asserted

arguments fails on the merits.

     First, Plaintiffs' argument that Section 656.17(i)(1) conflicts with the INA is undeveloped

and unpersuasive.  As noted, the INA requires the Secretary to make a substantive determination

before granting labor certification, *see* 8 U.S.C. § 1182(a)(5)(A)(i), but it does not prescribe the

process for seeking a certification.  The Department of Labor's regulations fill that gap and "set

forth the procedures through which such immigrant labor certifications may be applied for[] and

granted or denied."   20 C.F.R. § 656.1(b).  Plaintiffs never explain how the implementing

regulations conflict with the statute, and, for the reasons explained above, the Court is

unpersuaded that they do.

Second, Plaintiffs' contention that there is "no rule" limiting a Certifying Officer to considering the ETA Form 9089 is perplexing, but also beside the point. For present purposes, because See sought to submit supplementary evidence with its request for reconsideration and challenges only the Board's decision not to consider that evidence, the Court need consider only the regulations governing that process. As discussed, those regulations unambiguously limit the evidence that an applicant may submit and that the Certifying Officer may consider on reconsideration to a very narrow set of circumstances not applicable here. The Board correctly applied those regulations when considering See's appeal.

Finally, Plaintiffs' assertion that the two employment letters are part of the administrative record is true, but irrelevant. To be sure, "the administrative record should not include materials that were not considered by agency decisionmakers." *Pac. Shores Subdivision, Cal. Water Dist. v. U.S. Army Corps of Engrs*, 448 F. Supp. 2d 1, 4 (D.D.C. 2006) (quotation marks omitted). But the inclusion of Bhatt's employment letters in the administrative record does not mean that the letters were "considered" in the manner sought by Plaintiffs—that is, for the purpose of determining whether Bhatt had the requisite skills to perform the job described by See in its ETA Form 9089. Instead, the Certifying Officer and the Board "considered" the letters in deciding that they were, in effect, inadmissible under the governing regulations. See 20 C.F.R. § 656.24(g)(1) (describing narrow exceptions to the general prohibition on the submission of evidence in support of a request for reconsideration). The letters are therefore properly part of the administrative record, but their inclusion does not constitute an admission that the Department should have considered them on the merits.

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment, Dkt. 12, is

**DENIED**.  Defendants' cross-motion for summary judgment, Dkt. 13, is **GRANTED**.

A separate order will issue.


/s/ Randolph D. Moss
RANDOLPH D. MOSS
United States District Judge


Date:  January 26, 2022